UNITED STATES of America, Appellee,

v.

Pedro SAADE, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Carlos ZENON–RODRIGUEZ,
Defendant, Appellant.

Nos. 85–2023, 85-2024.

United States Court of Appeals,
First Circuit.

Argued June 4, 1986.

Decided Sept. 4, 1986.

Pedro J. Varela with whom Harry Anduze was on brief, for defendants, appellants.

Eduardo E. Toro-Font, Asst. U.S. Atty., with whom Daniel F. Lopez Romo, U.S. Atty., was on brief, for appellee.

Before BOWNES, Circuit Judge, BROWN,* Senior Circuit Judge, and BREYER, Circuit Judge.

BREYER, Circuit Judge.

The appellants were convicted of entering a military danger zone during naval target practice off the coast of the island of Vieques, in violation of 33 U.S.C. § 1 and 33 C.F.R. § 204.234 (creating danger zone off Vieques). We previously reviewed several claims by appellants that their con-

* Of the Fifth Circuit, sitting by designation.

victions were unlawful, and we rejected all of their arguments but two. We accepted appellants' argument that the regulation in question, 33 C.F.R. § 204.234, was valid only if promulgated under the authority of 33 U.S.C. § 3. That statute authorizes the Secretary of the Army to prescribe regulations "for the use ... of navigable waters ... endangered by Artillery fire in target practice." It also contains an important proviso:

> That the authority conferred shall be so exercised as not unreasonably to interfere with or restrict the food fishing industry, and the regulations prescribed in pursuance hereof shall provide for the use of such waters by food fishermen operating under permits granted by the Department of the Army.

We then reserved judgment with respect to appellants' further claim that the danger zone regulation did in fact "unreasonably ... interfere with ... the food fishing industry," and that it therefore fell within the proviso. We remanded the case for further findings.

Appellants argue that contrary to the proviso, the regulation did in fact "unreasonably ... interfere with or restrict the food fishing industry." We originally remanded the case because appellants had not had adequate opportunity to show whether or not this was so. *United States v. Saade*, 652 F.2d 1126, 1134 (1st Cir. 1981). Upon remand, the district court held that the regulation in question was valid and fell within the scope of the statute's authority, but it did not hold an evidentiary hearing. We remand again so that it can do so.

## I.

■ We first turn to the matter that primarily occupied both the parties and the court on remand, namely appellants' argument that the danger zone regulation, 33 C.F.R. § 204.234, is invalid for procedural reasons. Appellants claim that when the Department of the Army promulgated the danger zone regulation in 1971, it simply filed the appropriate notice in the Federal Register, sent copies of the proposal to potentially interested parties, and having received only one response, announced that the regulation was final. They conclude that these actions did not comply with several of the Army's own procedural rules, which state the following:

[1] The Army District Engineer must,] prior to issuing any public notice, make certain that the [Department of Defense or other agency requesting the Secretary's approval to establish a danger zone] ... has conducted preliminary discussions with local interests when considered advisable. [33 C.F.R. § 209.-200(c)(2).]

[2] ] Whenever the establishment of a proposed danger zone ... may affect fishing operations the District Engineer will consult with the regional director, U.S. Fish and Wildlife Service, Department of the Interior. [33 C.F.R. § 209.-200(c)(3).]

[3] The District Engineer] will issue public notices to all parties deemed likely to be interested.... [33 C.F.R. § 209.-200(g)(1).]

[4] P]ublic hearings ... will be held whenever there appears to be sufficient public interest to justify such action. [33 C.F.R. § 209.200(h)(1).]

[5] The District Engineer] ... will distribute copies of departmental regulations to all known interested parties as soon as their publication has been noted in the Federal Register. [33 C.F.R. § 209.200(a)(2).]

The record shows the following facts about the promulgation of the danger regulation in 1974:

1) Defense Department officials, aware of the political controversies that the proposed regulation might cause, debated (and disagreed) with each other about whether to consult with public officials in Puerto Rico before proposing the danger zone regulation. They eventually decided to send out notice of the proposal without holding preliminary discussions.

2) The Army widely disseminated copies of the proposal, sending text, explanation

and a map to 207 federal agencies, Commonwealth agencies, political officials in Puerto Rico, newspapers, television stations, radio stations, and private groups interested in wildlife and fishing. In particular, notices were sent to the Mayor of Vieques (a fairly small community with a population under 10,000), and two copies (in English) were posted in the Vieques Post Office.

3) The Army received only one response, from the Department of Agriculture, Soil Conservation Service. It had no objection to the proposal.

4) According to the Director of the Chief Operations Division of the Army Corps of Engineers (one of the officers in charge of promulgating the regulation), the Army handled "about a thousand" such cases per year.

5) After publication of the final regulation, a local newspaper ran an article stating the following:

> For the first time since the Navy began its firing and bombing practices from the Base of Ceiba, it has separated an area of Vieques—that covers one third of the Island on its east coast—for its firing practices.

> .     .     .     .     .

> The new map [representing the danger zone established by § 204.234] became effective last July 25, after it was published in two editions in the Federal Register. The publications took place on June 18 and July 25.

> The preparation of the map was publicized on June 5, 1973, and notice was circulated to all interested sectors.

> The map of the danger zone was prepared by the Army Corps of Engineers.

> The period to comment and object to the proposal expired on May 20 of this year. Nobody opposed, according to the announcement, and from then on the proceedings followed their normal course until [the regulation] was published in the Federal Register, as required for it to be official and effective.

*El Nuevo Dia,* August 21, 1974 (our translation). The record reveals no requests for reconsideration nor other objections to the regulation at or near the time of its promulgation.

In deciding whether or not these facts demonstrate compliance with the Army's own regulations, we recognize that we must give considerable weight to an agency's interpretation of its own regulations. *Immigration & Naturalization Serv. v. Stanisic,* 395 U.S. 62, 72, 89 S.Ct. 1519, 23 L.Ed.2d 101 (1969); *Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Bowles v. Seminole Rock Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). As a matter of law, we ask whether the agency could reasonably take these facts as showing compliance with its regulations as it might reasonably interpret them. Moreover, we recognize that the Army must interpret its regulations to apply not only to Vieques but also to hundreds of other situations, many or most of which will turn out not to involve any controversy. To *require* the Army to hold discussions or hearings, after widespread notice suggests the absence of any real controversy, could threaten, through overly elaborate, bureaucratized procedure, to make unnecessarily difficult the selection of target practice ranges. Because we cannot say that this is an unreasonable concern, the Army may interpret its procedural regulations with such considerations in mind.

That being so, given the widespread notice and lack of response, the Army could conclude here that "preliminary discussions with local interests" were not "advisable" within the meaning of 33 C.F.R. § 209.-200(c)(2). It could conclude that there was not "sufficient public interest" to require public hearings within the terms of 33 C.F.R. § 209.200(h)(1). Though the question is closer, we believe the Army could also reasonably find that sending a notice of the proposed action to the Regional Director of the U.S. Fish and Wildlife Service satisfied its regulation's admonition to "consult," 33 C.F.R. § 209.200(c)(3); that is to say, it might read regulation 33 C.F.R.

209.200(c)(3) not to require a more than token consultation when the Army reasonably believed, on the basis of widespread notice, that there was likely nothing substantive to consult about.

We also believe that sending 207 notices satisfied the regulation's requirement that notices be issued to "all parties deemed likely to be interested." 33 C.F.R. § 209.-200(g)(1). Appellants point out that notices were not sent to any individual fishermen or persons making a living from fishing operations. They say the Army knew or should have known that individual fishermen were "likely to be interested," and that in 1953 the Army had sent notices to individuals. Yet, we cannot say the Army is reading its rule unreasonably in light of the facts that 1) its files in 1971 did not contain any current names or addresses of particular local fishermen; and 2) it made reasonable efforts to bring its action to the attention of those living in the area by sending notices, among others, to the press, to local officials, including the Mayor of Vieques, and to at least those users of the Vieques Post Office who understood English (though notices in Spanish would have been preferable). For similar reasons, we conclude that the Army complied with the requirement that it send copies of its regulations to "all known interested parties" after publication. In sum, we agree with the district court that the promulgation of the danger zone regulation did not violate the Army's procedural regulations (read as the Army might lawfully interpret them).

## II.

■ Appellants also claim that the danger zone regulation is invalid because it failed to satisfy that part of the proviso that required the Army to "provide for the use of such waters by food fishermen operating under permits." 33 U.S.C. § 3. The regulation itself, however, says that the restricted area is "open to navigation at all times except when firing is being conducted." In light of this fact, the regulation seems to comply with this part of the provi-

so—at least in the absence of any evidence suggesting a need for greater access to fishing. Regardless, the appropriate remedy for violation of this "permit" provision would be an order requiring more permits, not invalidation of the entire regulation.

## III.

■ We turn now to the question whether or not the danger zone regulation violated the proviso because it "unreasonably ... interfere[d] ... with ... the food fishing industry...." We remanded this case previously so that the district court could take evidence on this point and decide, in light of that evidence, whether or not the regulation fell within the scope of the authorizing statute. *United States v. Saade*, 652 F.2d at 1134. *See also* Nathanson, *Probing the Mind of the Administrator: Hearing Variations and Standards of Judicial Review under the Administrative Procedure Act and other Federal Statutes*, 75 Colum.L.Rev. 721, 755 & n. 172 (1975).

Instead of holding the hearing, however, the district court seems to have decided the case on other grounds. As far as we can make out from the record, the parties began to prepare for the hearing, and presented a list of expert witnesses. The defendants then moved to dismiss based on the procedural grounds discussed above. The parties subsequently agreed to postpone the evidentiary hearing on the "proviso" issue while the defendants pursued their procedural attacks. The district court eventually told the parties it would hold the evidentiary hearing to determine the facts in existence at the time the regulation was promulgated in 1974. The government then asked for summary judgment, arguing that the "proviso" issue should be decided on the basis of the administrative record, without recourse to an evidentiary hearing. Despite appellants' request for the hearing to determine whether the danger zone regulation met the test of the statute's "proviso," the court did not hold the hearing. Instead, the court apparently accepted the government's argument and simply granted its motion for summary judgment.

It is plain to us that the district court erred in refusing to hold the evidentiary hearing that the appellants requested. We remanded for that very purpose. The government apparently argued to the district court that instead it should determine the substantive lawfulness of the regulation on the basis of the administrative record—a record that (due to the lack of response) was silent on the question. We recognize that, in recent years, parties challenging the validity of a regulation often do so at the time it is issued, on the basis of the administrative record. But, an older and still valid legal tradition allows a party to wait, challenging the regulation's validity when the agency seeks to enforce the regulation. Then, if the claim of invalidity requires an evidentiary hearing, the court may permit the creation of an appropriate factual record. *See* Nathanson, *supra,* at 745, 755–57, 763–64. That is what we ordered. *See Briggs v. Pennsylvania R.R. Co.,* 334 U.S. 304, 306, 68 S.Ct. 1039, 1040, 92 L.Ed. 1403 (1948); *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.,* 669 F.2d 490, 493 (7th Cir.), *cert. denied,* 459 U.S. 943, 103 S.Ct. 257, 74 L.Ed.2d 201 (1982). We therefore reiterate that appellants may present evidence designed to show that the regulation unreasonably interfered with the food fishing industry.

We note that appellants did not challenge the district court's grant of summary judgment in their initial brief on this appeal. However, they raised the matter at oral argument. Because we previously ordered the hearing and the failure to hold it resulted from the position that the government took in the court below, we shall accept appellants' tardy mention of the point. *See Shirey v. Devine,* 670 F.2d 1188, 1191 n. 7 (D.C.Cir.1982); *Harris v. Smith,* 372 F.2d 806, 815 (8th Cir.1967).

*The case is remanded for proceedings consistent with this opinion.*

JOHN R. BROWN, Senior Circuit Judge, concurring.

I concur in the result and the opinion. I write separately to emphasize several things.

First, the prediction of then Judge, now Chief Judge, Campbell, in his dissent, 652 F.2d 1126, 1140, has come to pass. He predicted that if the procedure of remand despite the absence of trial objections is to be allowed,

> litigants will not only be encouraged to save up ammunition for *de novo* use in the appellate court, but already overburdened courts will end up holding double hearings at the expense of other litigants whose claims have yet to be heard at all.

No longer is it "double hearings." Now it means at least a triple hearing, assuming—a not too unlikely assumption—that the government will not once again divert the district court from conducting the mandated factual hearing. As Judge Breyer's opinion makes so clear for us, that is exactly what took place:

> The district court eventually told the parties it would hold the evidentiary hearing to determine the facts in existence at the time the regulation was promulgated in 1974. The government then asked for summary judgment, arguing that the "proviso" issue should be decided on the basis of the administrative record, without recourse to an evidentiary hearing. Despite appellants' request for the hearing to determine whether the danger zone regulation met the test of the statute's "proviso," the court did not hold the hearing. Instead, the court apparently accepted the government's argument and simply granted its motion for summary judgment.

This case is once again a spectacular example of the lack of utility—indeed, the lack of sense—in the reflex making of motions for summary judgment. With society's demand for finality in criminal cases, the government should have read, and then heeded, the plain words of this Court to proceed with the evidentiary hearing which the trial court was ready to conduct and which the Court had so plainly ordered "to determine whether 33 C.F.R. § 204.234 unreasonably interferes with the food fishing industry." 652 F.2d at 1134.

Now, five years later, we start all over again.  The guilt for this lost time [1] cannot really be placed on the judiciary.

---

1. Complying with this Court's mandate would have assured a decision which could (and ought to) have been the subject of this present appeal: If the district court rules that the danger zone regulation complies with the fishing proviso, the convictions shall stand.  If the court rules to the contrary, it shall dismiss the informations.

652 F.2d at 1134.