# United States Court of Appeals
## For the First Circuit
_____

No. 03-2517

UNITED STATES OF AMERICA,

Appellee,

v.

CACIMAR ZENÓN-ENCARNACIÓN,

Defendant, Appellant.

_____

No. 03-2518

UNITED STATES OF AMERICA,

Appellee,

v.

PEDRO ZENÓN-ENCARNACIÓN,

Defendant, Appellant.

_____

No. 03-2519

UNITED STATES OF AMERICA,

Appellee,

v.

REGALADO MIRÓ-CORCINO,

Defendant, Appellant.

_____

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. District Judge]

_____

Before

Boudin, <u>Chief Judge</u>,

Lynch, <u>Circuit Judge</u>, and

Schwarzer, <u>Senior District Judge</u>.[*]

_____

<u>Fermin L. Arriaza-Navas</u>, with whom <u>Harry Anduze Montaño</u> was on the brief, for appellants.
<u>Julie B. Mosley</u>, Assistant United States Attorney, with whom <u>H. S. Garcia</u>, United States Attorney, and <u>Sonia I. Torres-Pabón</u>, Assistant United States Attorney, were on the brief, for appellee.

_____

October 25, 2004

_____

---

[*]Of the Northern District of California, sitting by designation.

**SCHWARZER**, <u>Senior District Judge</u>. Appellants Pedro Zenón-Encarnación, Cacimar Zenón-Encarnación, and Regalado Miró-Corcino appeal their convictions for violating 18 U.S.C. § 1382 by illegally entering certain waters designated as a "danger zone" around the island of Vieques during a United States Navy training exercise. We vacate the convictions and remand for further proceedings.

## FACTUAL AND PROCEDURAL HISTORY

We recite the facts as found by the district court in the light most favorable to the verdict. <u>United States</u> v. <u>Van Horn</u>, 277 F.3d 48, 54 (1st Cir. 2002).

On April 9, 2002, the Navy was conducting a training exercise in South Salinas Bay, part of the waters around the island of Vieques. By regulation the bay had been designated a "danger zone" closed to the public during such exercises. 33 C.F.R. § 334.1470. The Navy had previously posted notices announcing the exercise in both Spanish and English. During the exercise, two small boats carrying five passengers wearing wet suits and ski masks entered the bay. The exercise was halted, and naval security approached the trespassers, advising them to leave. They refused and remained in the area for over an hour, interfering with naval operations. Ultimately, the appellants were identified as the occupants of the boats and were charged and brought to trial. There is no dispute that appellants were occupants of these boats.

Trial was held before Magistrate Judge Aida Delgado Colón in November 2002.  All of the appellants were adjudged guilty of criminal trespass in violation of 18 U.S.C. § 1382.  The magistrate judge sentenced Regalado Miró-Corcino to one year probation and forty-five days of incarceration and Pedro and Cacimar Zenón-Encarnación to one year probation and four months of incarceration each.

Appellants appealed their convictions and sentences to the district court, which affirmed.  United States v. Zenón, 285 F. Supp. 2d 109, 111 (D.P.R. 2003).  Appellants timely appealed to this court.

## DISCUSSION

### I.  STANDARD OF REVIEW

Appellants' arguments raise questions of law and statutory interpretation, which we review de novo.  Pride Hyundai, Inc. v. Chrysler Fin. Co., L.L.C., 369 F.3d 603, 612 (1st Cir. 2004); United States v. Maxwell, 254 F.3d 21, 24 (1st Cir. 2004).

### II.  THE MERITS

A.  Designation of South Salinas Bay as a "Danger Zone"

Section 1382 makes it illegal to "go[] upon any military, naval, or Coast Guard reservation, post, fort, . . . or installation for any purpose prohibited by law or lawful regulation."  18 U.S.C. § 1382.  The regulation at issue in this case (the "danger zone regulation") designates an area including

South Salinas Bay "open to navigation at all times except when firing is being conducted." 33 C.F.R. § 334.1470(b)(1). When firing is being conducted, "no persons or surface vessels, except those patrolling the area, shall enter or remain within the danger area." Id. Entry into the designated area during firing therefore constitutes a violation of § 1382.

Appellants challenge their convictions on the ground that the Navy could not lawfully designate a danger zone under the regulation because it lacked a valid National Pollutant Discharge Elimination System (NPDES) permit on April 9, 2002. 33 U.S.C. §§ 1311(a), 1323(a) (NPDES requirement). See Romero-Barcelo v. Brown, 478 F. Supp. 646, 664 (D.P.R. 1979) (requiring permit for Navy exercises), aff'd on other grounds, Weinberger v. Romero-Barcelo, 456 U.S. 305 (1982), after being rev'd on other grounds, 643 F.3d 835 (1st Cir. 1981). The Navy received a valid NPDES permit in 1984. That permit expired in 1989, and the Navy applied to the Environmental Protection Agency ("EPA") for a new permit. The EPA deemed the application complete but failed to act on it. Under the applicable regulation, this failure meant that the 1984 permit "continue[d] in force" despite its expiration.[1] 40 C.F.R.

---

[1]The regulation provides that, "[w]hen EPA is the permit-issuing authority, the conditions of an expired permit continue in force until the effective date of a new permit . . . if: (1) The permittee has submitted a timely application . . . which is a complete . . . application for a new permit; and (2) the Regional Administrator [of the EPA] through no fault of the permittee does not issue a new permit with an effective date . . . on or before

§ 122.6(a).

Appellants contend, however, that the Clean Water Act requires not only EPA approval but also certification by the relevant state (in this case, Puerto Rico) that the proposed pollution meets state water quality standards (in the form of a "water quality certificate" or "WQC"). 33 U.S.C. § 1341(a). The WQC is a prerequisite to the EPA's issuance of an NPDES permit. In February 2000, the Puerto Rico Environmental Quality Board ("EQB") denied the Navy's application for a WQC, and that denial became final. As a consequence, say appellants, the 1984 permit no longer continues in force because EPA could not have issued a new one following denial of the WQC.

We disagree. The EPA did not revoke or terminate the permit or deny the application, nor did the Navy withdraw its application until after April 9, 2002. Even after the EQB's denial of the WQC application, the application process before the EPA continued through April 9, 2002. Thus, under the terms of the regulation, the permit was administratively continued in force on the date of the incident.

B. <u>Trial Before a Magistrate Judge</u>

Appellants contend that their convictions must be vacated because trial was held before a magistrate judge. They argue that the case involved misdemeanors for which they received sentences

---

the expiration date of the previous permit." 40 C.F.R. § 122.6(a).

of imprisonment, rather than petty offenses, and that their consent was a prerequisite to a trial before a magistrate judge.

This contention is readily disposed of. Under 28 U.S.C. § 636(a)(4), magistrate judges have "the power to enter a sentence for a petty offense." See also 18 U.S.C. § 3401 ("(a) [A]ny United States magistrate shall have jurisdiction to try persons accused of, and sentence persons convicted of, misdemeanors committed within that judicial district. (b) Any person charged with a misdemeanor, other than a petty offense may elect, however, to be tried before a district judge for the district in which the offense was committed.") (emphasis added). Under these provisions, a magistrate judge has authority to try and sentence a person charged with a petty offense.

Section 19 defines "petty offense" as "a Class B misdemeanor, a Class C misdemeanor, or an infraction, for which the maximum fine is no greater than the amount set forth for such an offense in section 3571(b)(6) or (7) in the case of an individual." 18 U.S.C. § 19. Section 3571(b) sets the maximum fine for an individual for a Class B or C misdemeanor that does not result in death at $5000. Class B and C misdemeanors and infractions are further defined under § 3581 (a)(7)-(9) by their authorized terms of imprisonment, six months in the case of Class B misdemeanors. These principles are well settled. See United States v. Chavez, 204 F.3d 1305, 1311 (11th Cir. 2000) ("Assault by striking,

-7-

beating, or wounding is presumptively a petty offense. It carries a maximum penalty of six months' imprisonment or a $5000 fine or both. The offense is classified as a Class B misdemeanor. Congress has expressly designated Class B misdemeanors as 'petty offense[s].' See 18 U.S.C. § 19." (some citations omitted) (alteration in original)); United States v. Kozel, 908 F.2d 205, 206-07 (7th Cir. 1999) (concluding that the argument that 18 U.S.C. § 19, by its silence on imprisonment, abolishes prison sentences for all "petty offenses" is "nonsense" and that "[t]he purpose of § 19 is simply to limit prison time for crimes covered by that section to 6 months").[2]

Appellants were charged with violation of § 1382, which provides for a fine or imprisonment of not more than six months. Because violation of that section is a petty offense, the magistrate judge had authority to try and sentence appellants without their consent.

C. Charging Under 18 U.S.C. § 1382

1. Applicability of the statute

Appellants challenge their convictions on the ground that entry into a danger zone can be prosecuted only under 33 U.S.C.

_____

[2] Appellants also argue that Federal Rule of Criminal Procedure 58 guarantees them a jury trial and precludes their trial before a magistrate judge without their consent. However, the version of Rule 58 that appellants cite has been superseded. Rule 58 now expressly provides that defendants have "the right to trial, judgment, and sentencing before a district judge — unless: (i) the charge is a petty offense." Rule 58(b)(2)(E).

§ 3, and not under 18 U.S.C. § 1382 or any other statute, because the regulation establishing the danger zone, 33 C.F.R. § 334.1470, was promulgated under 33 U.S.C. § 3.

The argument is without merit. As noted above, § 1382 provides that persons who "go[] upon any military, naval, or Coast Guard reservation, post, fort, arsenal, yard, station, or installation, <u>for any purpose prohibited by law or lawful regulation</u> . . . [s]hall be fined under this title or imprisoned not more than six months, or both." 18 U.S.C. § 1382 (emphasis added). The statute's plain language demonstrates that § 1382 applies to persons who violate <u>any law or lawful regulation</u> by trespassing onto a naval installation. We have repeatedly held that the Navy's lawful designation of a regulatory danger zone suffices to establish liability under § 1382. <u>United States</u> v. <u>Zenón-Rodríguez</u>, 289 F.3d 28, 31-32 (1st Cir. 2002) ("Because the U.S. exercised control over the South Salinas Bay area [by properly establishing it as a danger zone under 33 C.F.R. § 334.1470] . . ., unlawful entry onto that area was prohibited under 18 U.S.C. § 1382."); <u>United States</u> v. <u>Ventura-Meléndez</u>, 275 F.3d 9, 17 (1st Cir. 2001) (holding that the permissible designation of a danger zone subjects trespassers to § 1382 liability).

Appellants' reliance on footnote five of <u>United States</u> v. <u>Saade</u>, 652 F.2d 1126 (1st Cir. 1981) ("<u>Saade I</u>"), is misplaced. The court noted there that § 1 could not serve as a parallel grant

of criminal jurisdiction to § 3 because § 1 did not authorize danger zone regulations. Id. at 1132 n.5.  The observation is not relevant to the instant prosecution under § 1382, which does not limit violations to particular regulations, but criminalizes all trespassing on any naval installation for any purpose prohibited by law or lawful regulation.  The Navy's designation of the instant danger zone plainly prohibited the defendants' actions, and thus subjected them to § 1382 liability.

> 2.  Availability of the food fishing
>     proviso defense

Appellants have a second string to their bow.  They argue that by electing to charge under § 1382 instead of § 3, the government denied them the right to assert a valid jurisdictional defense since § 3 entitles them to a mandatory evidentiary hearing on whether promulgation of a danger zone would unreasonably interfere with or restrict the food fishing industry.  33 U.S.C. § 3 (the food fishing proviso).

Appellants are mistaken.  As we pointed out in Zenón-Rodríguez, 289 F.3d at 35, since 1993 the authority to promulgate danger zone regulations has resided in both 33 U.S.C. § 1 and 33 U.S.C. § 3, since 33 C.F.R. § 334.3(b) contains a food fishing proviso substantially identical to that in 33 U.S.C. § 3.[3]  "33

---

[3] The regulation provides, in part: "The authority to prescribe danger zone and restricted area regulations must be exercised so as not to unreasonably interfere with or restrict the food fishing industry.  Whenever the proposed establishment of a danger zone or

C.F.R. § 334.3(b) applies to 33 C.F.R. § 334.1470." Id. For purposes of the application of the food fishing proviso, it is therefore immaterial whether the charge is under § 3 or § 1382.

Appellants sought an evidentiary hearing in the district court on the issue of whether the designated danger zone unreasonably interfered with or restricted the food fishing industry in the area, offering extensive evidence.[4] The district court denied the hearing. Appellants now contend that this was error requiring that the convictions be vacated.

The district court reasoned that Zenón-Rodríquez disposed of appellants' claim, stating that

> the Court of Appeals has held that 33 C.F.R. § 334.1470 would have been validly promulgated under either 33 U.S.C. § 1 or 33 U.S.C. § 3, because the existence of 33 C.F.R. § 334.3(b) ensures that the requirements of the "food fishing proviso" will be applicable to the danger zone established in 33 C.F.R. § 334.1470, regardless of whether it was promulgated under 33 U.S.C. § 3 or 33 U.S.C. § 1. . . . Given the First Circuit's recent decision regarding the very issue raised before the Court by Defendants, we must find that we need not remand the case for an evidentiary hearing on the "food fishing

---

restricted area may affect fishing operations, the District Engineer will consult with the Regional Director, U.S. Fish and Wildlife Service, Department of the Interior and the Regional Director, National Marine Fisheries Service, National Oceanic & Atmospheric Administration (NOAA)." 33 C.F.R. § 334.3(b).

[4]This included evidence detailing the Navy's improper discharges of heavy metals, evidence of disturbance of ecological systems including seagrass beds and coral reefs, and evidence of toxic substances in plant and animal tissue samples.

-11-

proviso" issue.

Zenón, 285 F. Supp. 2d at 114. The district court misapprehended the holding of Zenón-Rodríguez. That case rejected a challenge to prosecution under § 1382 on the ground that the danger zone regulation had been promulgated under 33 U.S.C. § 1, which lacked a food fishing proviso limiting the discretion of the Secretary of the Army, and not under 33 U.S.C. § 3, which contained such a proviso. 289 F.3d at 35. It did not reach the question whether the defendants were entitled to an evidentiary hearing under the food fishing proviso, the court having found that the appellants had forfeited the issue.

We addressed this issue squarely in Saade I, in which we held that defendants were entitled to challenge the validity of the danger zone regulation under the food fishing proviso, stating that "the district court had an obligation to ascertain whether the Secretary had complied with the proviso when issuing the regulation." 652 F.2d at 1134. We remanded for further proceedings to determine whether 33 C.F.R. § 204.234 unreasonably interfered with the food fishing industry. On remand, the district court declined to hold an evidentiary hearing and decided the case in favor of the government on the administrative record. On appeal, we again remanded, stating:

> It is plain to us that the district court erred in refusing to hold the evidentiary hearing that the defendants requested. We remanded for that very purpose. . . . We

> recognize that, in recent years, parties challenging the validity of a regulation often do so at the time it is issued, on the basis of the administrative record. But, an older and still valid legal tradition allows a party to wait, challenging the regulation's validity when the agency seeks to enforce the regulation. Then, if the claim of invalidity requires an evidentiary hearing, the court may permit the creation of an appropriate factual record. That is what we ordered. We therefore reiterate that appellants may present evidence designed to show that the regulation unreasonably interfered with the food fishing industry.

United States v. Saade (Saade II), 800 F.2d 269, 273 (1st Cir. 1986) (Breyer, J.) (citations omitted).

Saade II remains good law. Indeed, far from undermining the decision by repeal of its regulations, the Army Corps of Engineers has since amended the relevant regulations, see 33 C.F.R. § 334.3(b); 58 Fed. Reg. 37,607 (July 12, 1993), clarifying and reinforcing the application of the food fishing proviso to all danger zone and restricted area regulations. 58 Fed. Reg. 37,607 (July 12, 1993); see Zenón-Rodríguez, 289 F.3d at 35 (stating that the added provision changed the "regulatory context . . . significantly").

## CONCLUSION

The district court erred in denying the defendants an evidentiary hearing. We remand the case for proceedings consistent with this opinion. If, after an evidentiary hearing, the district court rules that the danger zone regulation complies with the food

-13-

fishing proviso, the convictions shall stand.  <u>See</u> <u>Saade I</u>, 652 F.3d at 1134.

**REMANDED.**

**-- concurrence follows --**

**BOUDIN, Chief Judge, and Lynch, Circuit Judge, concurring.** Although we agree that this remand is required by United States v. Saade ("Saade I"), 652 F.2d 1126 (1st Cir. 1981), we question the soundness of that decision. If a fisherman or other affected party thought that the zone were unlawful because of its impact on commercial fishing, a proper means of challenging the regulation would be an action for declaratory and injunctive relief in the district court. Such an action would lie under established precedent, see Shields v. Utah Idaho Cent. R.R., 305 U.S. 177, 183-85 (1938); Am. Sch. of Magnetic Healing v. McAnnulty, 187 U.S. 94, 108-111 (1902); R.I. Dep't of Env't Mgmt. v. United States, 304 F.3d 31, 40-45 (1st Cir. 2002); 5 U.S.C. § 702 (2000), as the enabling statute provides no means for judicial review of orders authorizing such zones. 33 U.S.C. §§ 1, 3 (2000).

Given the opportunity for a direct challenge to such a zone, it seems to us open to question whether either a fisherman or a protester should be allowed to sail deliberately into a known restricted military zone and then challenge the regulation by way of defense in a criminal case. It is hard to believe that Congress, if it had provided expressly for judicial review of zones created under 33 U.S.C. §§ 1 and 3, would have made the remedy optional and contemplated that the regulation could also be challenged by defiance--a course that could present dangers both for the challenger and for military operations.

The Administrative Procedure Act makes clear that the ability to test a regulation during enforcement proceedings does not exist where the law provides an alternative remedy that is adequate and exclusive. See 5 U.S.C. § 703 (2000). This certainly encompasses situations where Congress creates the direct remedy and provides (either explicitly or otherwise) that it is exclusive. See Yakus v. United States, 321 U.S. 414, 443-47 (1944); see also Block v. Cmty. Nutrition Inst., 467 U.S. 340, 345-53 (1984). But where the direct means of challenging the regulation derives from court precedent (or its codification in the generally phrased APA), arguably the courts may determine whether the direct remedy is or is not exclusive and, also arguably, the direct remedy should be exclusive here.

The government has not raised this objection, but has relied instead on an attempt to distinguish Saade I that the panel opinion properly rejects. Only the en banc court can revisit Saade with respect to any holding of that decision. See Ed Peters Jewelry Co. v. C & J Jewelry Co., 215 F.3d 182, 190-91 (1st Cir. 2000). Because of public interest concerns, we would not necessarily regard the government's failure to raise the above objection as precluding the exclusivity argument if the government chose to raise it by petition for rehearing en banc, although we are not committed to accept the argument unless and until the matter is adequately briefed.

We think it proper to raise this possibility not only because of our uncertainty as to the correctness of <u>Saade I</u> but also because the government otherwise has no incentive to contest a seemingly settled holding.  This is at least the third case in which a defendant seeks to defend against prosecution by raising the same challenge to the same zone--a fact that underscores doubts about the <u>Saade I</u> regime.